JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Matthew Schultz, appeals his conviction from the Cuyahoga County Court of Common Pleas. Finding error in the proceedings below, we affirm in part, reverse in part, and remand.
 {¶ 2} In July 2006, Schultz was charged with operating a vehicle under the influence of alcohol (OVI)[1] pursuant to R.C. 4511.19(A). Included in the charge was a specification that, within twenty years of this offense, Schultz had been convicted of or pled guilty to five or more equivalent offenses. In addition, a furthermore specification was included, indicating that Schultz refused to submit to chemical testing. See R.C. 4511.19(G)(1)(d). As charged with the specifications, the offense is a felony of the fourth degree.
 {¶ 3} Schultz filed a motion to dismiss the indictment, alleging errors with the specifications. After a hearing, the motion was denied. Schultz waived a jury and was tried to the bench. He was found guilty of OVI with the specifications, which is a *Page 2 
felony of the fourth degree. He was sentenced to a year in prison, three years of post-release control, and a lifetime driver's license suspension.
 {¶ 4} Schultz appeals, advancing three assignments of error for our review.
 First Assignment of Error {¶ 5} "The trial court erred in accepting and proceeding on a defective and fatally flawed indictment over defendant's objection."
 {¶ 6} Under this assignment of error, Schultz argues that the indictment was technically flawed because it does not state that he was charged with a felony of the fourth degree. In addition, he argues that the specifications are not properly set forth. We disagree.
 {¶ 7} R.C. 2945.75(A)(1) provides that when the presence of one or more additional elements makes an offense one of a more serious degree, the indictment either shall state the degree of the offense that the accused is alleged to have committed or shall allege such additional element or elements. Otherwise such indictment is effective to charge only the least degree of the offense.
 {¶ 8} Here, the indictment set forth the additional elements (prior convictions) that elevated the charged offense to a felony of the fourth degree. It was not necessary to specifically state that Schultz was charged with a felony of the fourth degree. *Page 3 
 {¶ 9} As for Schultz's complaint that the specifications were not properly set forth, we find no merit to this argument. R.C. 2941.1413
sets forth the requirements for repeat OVI specifications. It states the following:
 "(A) Imposition of a mandatory additional prison term of one, two, three, four, or five years upon an offender under division (G)(2) of section 2929.13 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging a felony violation of division (A) of section 4511.19 of the Revised Code specifies that the offender, within twenty years of the offense, previously has been convicted of or pleaded guilty to five or more equivalent offenses. The specification shall be stated at the end of the body of the indictment, count, or information and shall be stated in substantially the following form:"SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT). The Grand Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender, within twenty years of committing the offense, previously had been convicted of or pleaded guilty to five or more equivalent offenses)."
 {¶ 10} This is precisely the format of Schultz's indictment. Accordingly, Schultz's first assignment of error is overruled.
 Second Assignment of Error {¶ 11} "The trial court erred in finding the defendant guilty of felony 4 OVI because it lacked sufficient evidence to do so."
 {¶ 12} A challenge to the sufficiency of the evidence attacks the adequacy of the evidence presented. Whether the evidence is legally sufficient to sustain a conviction is a question of law. See State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. The relevant inquiry in a claim of insufficiency is "`whether, after *Page 4 
viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.'" State v. Leonard,104 Ohio St.3d 54, 67, 2004-Ohio-6235, quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 Schultz's Prior Convictions {¶ 13} Schultz argues that he cannot be convicted of a felony OVI because his prior conviction for physical control under Cleveland Codified Ordinance 433.011 is not an "equivalent offense" as defined by R.C. 4511.181. The state argues that a physical control violation is a substantially equivalent offense under subsection (A)(6) of R.C. 4511.181 and thus may be used to enhance the OVI.
 {¶ 14} To enhance Schultz's OVI to a felony, he must have been convicted of five or more "equivalent offenses" in the past twenty years. One of Schultz's prior convictions is for driving under the influence in violation of Mentor Municipal Code 71.01(A)(1). Two of Schultz's prior convictions are for driving under the influence in violation of Cleveland Codified Ordinance 433.01. Another of Schultz's prior convictions is for driving under the influence in violation of R.C. 4511.19. Schultz stipulated to those four convictions. The last conviction cited for Schultz is a physical control violation under Cleveland Codified Ordinance 433.011.
 {¶ 15} In September 2004, Schultz pled guilty to being in physical control of a vehicle under the influence of alcohol in violation of Cleveland Codified Ordinance 433.011. "Physical control" is defined as being in the driver's position of the front *Page 5 
seat of a vehicle and having possession of the vehicle's ignition key or other ignition device. Id.
 {¶ 16} Because Schultz was convicted of a physical control violation under an existing municipal ordinance, we look to subsection (A)(6) of R.C. 4511.181 to determine if it is an equivalent offense. R.C. 4511.181(A)(6) defines an "equivalent offense" as a violation of an existing or former municipal ordinance, law of another state, or law of the United States that is substantially equivalent to division (A) or (B) of section 4511.19 of the Revised Code. R.C. 4511.19(A) prohibits a person from operating a vehicle while under the influence of alcohol or illegal drugs. Subsection (B) applies to persons under the age of 21.
 {¶ 17} R.C. 4511.19(A) and (B) both require operation of a vehicle, while a physical control violation does not. This distinction is important in light of the changes made to Ohio's OVI statute with the adoption of 2001 Sub. S.B. No. 123 (S.B. 123). The history of these changes is significant to our analysis and decision.
 Operation of a Vehicle: A Brief History {¶ 18} Before the General Assembly enacted S.B. 123, effective January 1, 2004, there was no statutory definition of "operate." The meaning of the term "operate" in R.C. 4511.19(A) and (B) had been exclusively a matter of judicial interpretation. In State v. Cleary (1986),22 Ohio St.3d 198, 199, the Supreme Court of Ohio said, "Operation of a motor vehicle within contemplation of the statute is a broader term than mere driving and a person in the driver's position in the front seat *Page 6 
with the ignition key in his possession indicating either his actual or potential movement of the vehicle while under the influence of alcohol or any drug of abuse can be found in violation of R.C. 4511.19(A)(1)." See, also, State v. McGlone (1991), 59 Ohio St.3d 122. In State v.Gill, 70 Ohio St.3d 150, 152-153, 1994-Ohio-403, the court expanded the definition of "operate" to include situations where the keys were in the ignition but the engine was not running.
 {¶ 19} But in S.B. 123, the General Assembly modified the definition in Gill and its predecessors by specifically defining "operate" in R.C. 4511.01(HHH), as well as by adding the words "at the time of the operation" to R.C. 4511.19(A)(1). State v. Wallace, 166 Ohio App.3d 845,848-849, 2006-Ohio-2477. Effective January 1, 2004, the term "operate," as used in R.C. Chapter 4511, "means to cause or have caused movement of a vehicle * * *." R.C. 4511.01(HHH). This modification narrows the definition of "operate," which effectively eliminates "drunk radio listeners, or people who use their cars as a four-wheeled, heated hotel room" from being convicted of OVI. Gill, 70 Ohio St.3d at 157-158
(Pfeifer, J., dissenting).[2] *Page 7 
 Physical Control Violations {¶ 20} In S.B. 123, the General Assembly created a newstatutory offense of "Having physical control of a vehicle while under the influence of alcohol." See R.C. 4511.194(B). Cleveland, as well as other municipalities, already prohibited being in physical control of a vehicle while under the influence of alcohol.[3]
 {¶ 21} The new statutory offense, like the municipal offense, prohibits being in physical control of a vehicle while under the influence of alcohol or other drug of abuse. R.C. 4511.194(B). R.C. 4511.194(A)(2) defines "physical control" as being *Page 8 
in the driver's position of the front seat of a vehicle and having possession of the vehicle's ignition key or other ignition device.
 {¶ 22} This offense is a misdemeanor of the first degree, and it does not enhance with subsequent convictions of physical control, unlike an OVI offense. Also, it does not carry with it mandatory jail terms, fines, suspensions, or immobilizations. The statute allows for a Class 7 license suspension and optional restricted plates, but it is a nonmoving, no points, violation.
 {¶ 23} Nevertheless, physical control violations require similar written and verbal advice regarding the administrative penalties for refusing to submit to chemical testing, known as "BMV Form 2255." This is because one in physical control of a vehicle gives implied consent to chemical testing. See R.C. 4511.191(A) and 4511.192. Further, a prior refusal, even for a physical control violation, will enhance the criminal penalties with a subsequent OVI conviction pursuant to R.C. 4511.19(A)(2). But, see State v. Hoover, 173 Ohio App.3d 487,2007-Ohio-5773 (finding R.C. 4511.19(A)(2) unconstitutional because it criminally penalizes a person for invoking his or her constitutional right to refuse a search [chemical test]); discretionary appeal allowed,State v. Hoover, S.Ct. No. 2007-2295, 2008-Ohio-2028. *Page 9 
 Analysis {¶ 24} Under the old law (pre-2004), it would appear that a physical control violation could be used to enhance an OVI offense because a person could be convicted of OVI without ever actually moving the vehicle. See City of Cleveland v. Schultz (Sept. 9, 1999), Cuyahoga App. No. 74839. In essence, an OVI and a physical control violation were the same offense because the element of "operate" was so broadly defined that the prohibited conduct was indistinguishable. Nevertheless, the potential penalties for OVI and a physical control violation were significantly different.
 {¶ 25} Today, the difference between an OVI and a physical control violation, besides the penalties, is that an OVI requires actual movement of the vehicle, whereas a physical control violation does not. After January 1, 2004, if there is no evidence that the person moved or caused the vehicle to move, that person cannot be convicted of OVI, but may be convicted of being in physical control of a vehicle while under the influence. Still, a person who is found passed out in his vehicle on the side of the highway may be convicted of an OVI because a jury could infer that the vehicle was moved to that location. However, if a person decides to "sleep it off" in the parking lot of the bar where the person drank, the person could be convicted only of a physical control violation, unless there is evidence of movement.
 {¶ 26} The question before us is whether a physical control violation may be used to enhance a current OVI offense. We hold that it cannot. *Page 10 
 {¶ 27} Again, we look to R.C. 4511.181(A)(6), which defines an equivalent offense as a violation of an existing or former municipal ordinance, law of another state, or law of the United States that is substantially equivalent to division (A) or (B) of section 4511.19 of the Revised Code.
 {¶ 28} All fifty states, and the District of Columbia, have their own unique drunk driving laws.[4] Obviously, subsection (A)(6) was written to encompass other states' drunk driving laws, that are substantially equivalent to Ohio's OVI laws, so that someone could not move to Ohio and have a "clean slate." See State v. Rogers, Montgomery App. No. 21208, 2006-Ohio-3516 (finding that Michigan's driving while impaired offenses under M.C.L. 257.625(1) and (3) are substantially equivalent to Ohio's OVI laws and thus may be used to enhance an OVI offense.)
 {¶ 29} More troubling, however, is the wording "existing or former municipal ordinance." When reading R.C. 4511.181 as a whole, it would appear that subsection (A)(6) applies to municipal violations otherthan violations of municipal OVI ordinances, because subsection (A)(2) specifically addresses municipal OVI offenses.[5] Indeed, it has long been held that when interpreting statutes "it is the duty *Page 11 
of this court to give effect to the words used, not to delete words used or to insert words not used." Columbus-Suburban Coach Lines, Inc. v.Pub. Util. Comm. (1969), 20 Ohio St.2d 125, 127. Consequently, it would seem that a conviction for being in physical control of a vehicle while under the influence of alcohol, as a violation of an existing municipal ordinance, could potentially be substantially equivalent to operating a vehicle while under the influence, again the major difference being that OVI requires operation of the vehicle, while physical control does not.
 {¶ 30} Nevertheless, the General Assembly amended Ohio's OVI statute narrowing the definition of "operate" to require that the person cause movement of the vehicle.[6] Since the legislature chose to define "operate," we must assume that the amendment was intended to change existing law. Furthermore, the legislature created the new statutory offense of being in physical control while under the influence and chose not to specifically include it under R.C. 4511.181 as an equivalent offense, and we note that other equivalent offenses are specifically included.[7] Finally, the rule of statutory construction is that criminal statutes shall be *Page 12 
strictly construed against the state and liberally construed in favor of the accused. R.C. 2901.04(A).
 {¶ 31} Although, we recognize that being in physical control of a vehicle while under the influence in violation of R.C. 4511.194 is likely the lesser included offense of OVI in violation of R.C. 4511.19, this alone is not controlling as to whether it is an "equivalent" offense.
 Conclusion {¶ 32} We find that a physical control violation is not a substantially equivalent offense to R.C. 4511.19(A) or (B) and, thus, not an enhancing offense. Prior to S.B. 123, "you [were] just as guilty if you decide[d] to `sleep it off for the night as you [were] if you tr[ied] to drive home." Gill, 70 Ohio St.3d at 158 (Pfeifer, J., dissenting). The legislature has decided to be less harsh on individuals who choose not to drive under the influence. Although an individual may still be guilty of a criminal offense, now the better option is to "sleep it off" in his or her car rather than drive home.
 {¶ 33} In light of our foregoing analysis, we find that the evidence was insufficient to convict Schultz of a felony OVI.
 Refusal *Page 13 {¶ 34} Next, Schultz argues that the evidence was insufficient to find that he refused a chemical test because the BMV Form 2255 was not entered into evidence. Schultz cites no case law for his proposition, and we find none that indicates the BMV Form 2255 must be entered into evidence.
 {¶ 35} Officer Kazomer testified that he read Schultz the BMV Form 2255 in accordance with R.C. 4511.192(A) and that Schultz refused to submit to a chemical test. This evidence was uncontroverted.
 {¶ 36} Finally, Schultz argues that he did not refuse the chemical test; he was simply unable to urinate.
 {¶ 37} The case law addressing "refusal" has been well-settled for decades. State v. Owen (Oct. 19, 1998) Butler App. No. CA97-12-229. Specifically, in Hoban v. Rice (1971), 25 Ohio St.2d 111, paragraph three of the syllabus, the supreme court stated as follows:
 "[A] refusal to submit to a chemical test of the blood, breath or urine will occur where a person, by his acts, words or general conduct, manifests an unwillingness to submit to the test. Such refusal need not have been knowingly and intentionally made."
 {¶ 38} Whether a driver refused a test is a factual determination that is to be made by the trial court based upon all of the evidence before it. Owen, supra; see, also, State v. Basye (Feb. 4, 1997), Ross App. No. 96CA2211. "Such a refusal may be established when the evidence shows that the person who was given the request and advice * * * had thereafter conducted himself in such a way as to justify a *Page 14 
reasonable person in the position of the requesting officer to believe that such requested person was capable of refusal and manifested unwillingness to take the test." Andrews v. Turner (1977),52 Ohio St.2d 31, paragraph one of the syllabus.
 {¶ 39} At trial, Officer Kazomer testified that because the second district did not have a working Breathalyzer, Schultz was offered a urine or blood test. Officer Kazomer testified: "[Schultz] was willing to [take a urine test], but then he changed his mind. Then he said he was willing to, then he said no. Then I offered him blood, a blood test, and he refused that." We find that the trial court did not err when if found that Schultz refused chemical testing.
 {¶ 40} Schultz's second assignment of error is sustained in part, and overruled in part.
 Third Assignment of Error {¶ 41} "The trial court erred in finding defendant refused all tests is against the manifest weight of the evidence."
 {¶ 42} Schultz argues that his conviction for OVI is against the manifest weight of the evidence because he did not refuse all of the field sobriety tests or the chemical test.
 {¶ 43} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, *Page 15 
weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Internal quotes and citations omitted.) Leonard, 104 Ohio St.3d at 68.
 {¶ 44} Schultz was charged with operating a vehicle under the influence of alcohol under R.C. 4511.19(1)(a) with the specification that, within the last twenty years, he has been convicted of or pled guilty to five or more equivalent offenses, as well as refusing to submit to chemical tests.
 {¶ 45} At trial, the testimony revealed that while traveling on I-71 around 6:00 a.m., Schultz's vehicle was observed by Officer Burkhardt, of the Cleveland Police Department, weaving in and out of his lane of travel. When Schultz exited the freeway at West 25th
Street and Fulton Road, he approached a car stopped at the light. Officer Burkhardt testified that Schultz continued toward the stopped vehicle at a high rate of speed, and at the last minute, he hit the brakes and veered off the road, slamming into one of the crosswalk sign poles at the intersection. The pole was uprooted. Schultz traveled approximately 100 feet from the exit ramp, through the grass, until he collided with the pole.
 {¶ 46} Officer Burkhardt testified that when he approached Schultz's vehicle, he detected an odor of alcohol. Further, Schultz's responses were delayed, and his speech was slurred. When asked to exit the vehicle, Schultz staggered and was *Page 16 
falling from side to side. He was placed in the back of the zone car. Officer Burkhardt testified that Schultz was unable to stand on his own.
 {¶ 47} Officer Kazomer arrived on scene to assist, and he later testified that Schultz was flushed and red-nosed and had slurred speech and bloodshot eyes. He testified that Schultz smelled of alcohol and was unable to walk. Further, Schultz was rude and combative. Finally, Schultz refused field sobriety tests and then refused chemical testing.
 {¶ 48} We find that there is substantial evidence upon which the trial court could reasonably conclude that all the elements have been proved beyond a reasonable doubt. Schultz's conviction for OVI is not against the manifest weight of the evidence. Accordingly, his third assignment of error is overruled.
 Conclusion {¶ 49} We affirm Schultz's conviction for OVI. However, with only four prior OVI convictions in the past twenty years, his current OVI offense cannot be a felony of the fourth degree.
 {¶ 50} This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. *Page 17 
A certified copy of this entry shall constitute the mandate pursuant to
Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, JUDGE
MELODY J. STEWART, J., CONCURS;
COLLEEN CONWAY COONEY, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION
[1] In January 2004, 2001 Sub. S.B. 123, renamed the offense of "operating a motor vehicle under the influence" of alcohol or drugs (OMVI) to "operating a vehicle under the influence" (OVI). Originally, Ohio's drunk driving law was named "driving under the influence" (DUI).
[2] In his dissent in Gill, Justice Pfeifer pointed out:
"Under today's majority decision, coupled with the decision in [State v.] McGlone, [(1991), 59 Ohio St.3d 122,] the following scenario can occur: A married couple has the neighbors over for a barbecue. Everyone enjoys a few cold alcoholic beverages with dinner. The wife looks at her watch, and realizes that the Indians game has probably reached the ninth inning. A rabid fan, she runs to the car, which is parked in her own driveway, and turns the ignition key to activate the car radio. She sits on the driver's seat as Herb Score describes the game-winning home run: `It's going, going, gone!' She turns and sees her reflection in the sunglasses of the dutiful city police officer as he says, `You're gone too, ma'am — to the slammer!'
"The legislature's intent was to deter and to punish drunk drivers, not to punish drunk radio listeners, or people who use their cars as a four-wheeled, heated hotel room. * * *"
[3] The prior comparable Cleveland offense was previously found at Section 433.01, division (b), as amended by Ordinance No. 1592-2000, passed December 18, 2000. It prohibited being in actual physical control of any vehicle within the city of Cleveland when under the influence of alcohol or a drug of abuse. With the adoption of S.B. 123, Cleveland allowed the original Section 433.01(b) to expire and have no further force and effect as of January 1, 2004. Cleveland's new physical control ordinance is found in section 433.011 and mirrors the state code. It went into effect the same day as the provisions of S.B. 123. (See R.C. 4511.194; Ord. No. 835-03. Passed 6-10-03, eff. 1-1-04).
[4] The drunk driving statutes across the United States are as varied as their acronyms, which include: DUI, DWI, OUI, OWI, OVI, DUIL, DUII, DWAI, DWUI.
[5] R.C. 4511.181 provides the following:
 "(A) `Equivalent offense' means any of the following:(1) A violation of division (A) or (B) of section 4511.19 of the Revised Code;(2) A violation of a municipal OVI ordinance;"* * *
 "(6) A violation of an existing or former municipal ordinance, law of another state, or law of the United States that is substantially equivalent to division (A) or (B) of section 4511.19 of the Revised Code;"* * *
 "(C) `Municipal OVI ordinance' and `municipal OVI offense' mean any municipal ordinance prohibiting a person from operating a vehicle while under the influence of alcohol, a drug of abuse, * * *."
[6] The term "operate" is still broad enough to encompass an impaired passenger who grabs the steering wheel of a moving vehicle. SeeWallace, supra. But an impaired passenger cannot be convicted of a physical control violation because he is not in the driver's seat. See R.C. 4511.194(A)(2).
[7] "Equivalent offenses" include involuntary manslaughter with an impaired driving finding under R.C. 2903.04(D); vehicular homicide related to impairment under R.C. 2903.06; and vehicular assault related to impairment under R.C. 2903.08. See R.C. 4511.181.
We further note that S.B. 17, which will be effective September 27, 2008, expanded "equivalent offenses" to include operating or being in physical control of a watercraft, but again did not include being in physical control of a vehicle while under the influence.