[Cite as *State v. Ware*, 2011-Ohio-5665.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96327**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## GERMAINE WARE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-543201

**BEFORE:** Celebrezze, P.J., Sweeney, J., and Keough, J.

**RELEASED AND JOURNALIZED:** November 3, 2011

**ATTORNEY FOR APPELLANT**

Marcus S. Sidoti
Lindner, Sidoti, Jordan, L.L.P.
2077 East 4th Street
2nd Floor
Cleveland, Ohio   44115


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:    Mollie Ann Murphy
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113



FRANK D. CELEBREZZE, JR., P.J.:

{¶ 1}   Appellant, Germaine Ware, appeals the judgment of the trial court denying his motion to suppress and his conviction for failure to comply, in violation of R.C. 2921.331(B).   After careful review of the record and relevant case law, we affirm.

{¶ 2}   Appellant was indicted by the Cuyahoga Grand Jury in Case No. CR-538697 on one count of felonious assault, in violation of R.C. 2903.11(A)(2). Subsequently, appellant was reindicted in Case No. CR-543201 on one count of felonious assault, in violation of R.C. 2903.11(A)(2), and one count of failure to comply, in violation of R.C. 2921.331(B).

{¶ 3} On December 10, 2010, appellant filed a motion to suppress evidence and a motion to dismiss the failure to comply charge. On December 14, 2010, the trial court held a pretrial hearing to review appellant's motions. At the conclusion of the hearing, the trial court denied appellant's motion to suppress and motion to dismiss.

{¶ 4} Appellant waived his right to a jury trial on the failure to comply violation, and on December 15, 2010, appellant's charge for felonious assault proceeded to a jury trial while his failure to comply count was argued to the bench. At the conclusion of trial on December 20, 2010, appellant was found not guilty by the jury on the felonious assault charge. However, appellant was convicted by the trial court for failure to comply, a first degree misdemeanor. On December 28, 2010, appellant was sentenced to four months of community control sanctions.

{¶ 5} Appellant's timely appeal raises three assignments of error:

{¶ 6} I. "The trial court erred by denying appellant's motion to suppress where reasonable and articulable suspicion was not present to support a *Terry* stop."

{¶ 7} II. "The trial court erred by denying appellant's motion to dismiss where the statutory provision is invalid as applied to the present facts and circumstances."

{¶ 8} III. "Appellant's conviction for failure to comply with an order or signal of a police officer was against the manifest weight of the evidence."

## Law and Analysis

### I

{¶ 9} In his first assignment of error, appellant argues that the trial court erred by denying his motion to suppress where reasonable and articuable suspicion was not present to support a *Terry*[1] stop.

{¶ 10} During the pretrial suppression hearing, Cleveland Police Officer Jon Sanderson testified that he and his partner received a radio dispatch around 2:00 a.m. for a domestic violence call involving a male, Jarrell Starks, who was reportedly outside his ex-girlfriend's residence making threatening statements and breaking windows. The radio dispatcher advised the officers that a white vehicle parked in front of the residence was related to the incident. As the officers passed the residence, they saw a white vehicle parked directly in front of the house and saw a male, later identified as Starks, pacing back and forth on the sidewalk in front of the house and next to the parked vehicle. According to Officer Sanderson, the street was well lit, no other vehicles were on the street, and no other houses were on the block.

{¶ 11} The officers stopped their patrol car behind the white vehicle and observed two individuals sitting in the vehicle as passengers. Appellant was later identified as the individual sitting in the front passenger's seat of the vehicle. Once the officers exited their patrol car, Officer Sanderson asked Starks to slowly walk toward them, remove his hands from his pockets, and place them on the hood of the patrol car. The officers proceeded to pat down Starks against their patrol car. As soon as the pat down began,

---

[1] *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

Starks tried to run away, but the officers grabbed him, handcuffed him, and finished the pat down.

{¶ 12} Officer Sanderson testified that upon restraining Starks, he turned toward the white vehicle and saw appellant in the passenger seat lean over towards the driver's seat as if he was trying to reach for something. Officer Sanderson then walked toward the vehicle and, after taking two steps, heard the vehicle's engine start. Officer Sanderson testified that, at that time, he became concerned for his safety and the safety of his partner. When he approached the driver's side window, he found appellant with one of his hands turning the steering wheel. Officer Sanderson testified that he drew his weapon and ordered appellant to "Stop. Turn the car off." After Officer Sanderson gave this order, appellant turned the steering wheel with his left hand and revved the engine. Officer Sanderson then felt the car push against him, and he jumped back and fired a round at appellant because he thought appellant was "trying to run him over and kill him." Appellant proceeded to flee the scene, and the officers were unable to catch up to the speeding vehicle.

{¶ 13} Officer Alford testified that he also saw appellant make suspicious, furtive movements in the vehicle. According to Officer Alford, "I saw a shadow form begin to reach over from the passenger front side toward the driver's side and duck down underneath the driver's seat as if he was trying to get something." Officer Alford testified that, in his experience, appellant's movements were consistent with an individual who "was potentially dangerous and possibly going for a weapon."

**{¶ 14}** In *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8, the Ohio Supreme Court explained the standard of review for a motion to suppress as follows:

**{¶ 15}** "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539."

**{¶ 16}** Appellant argues that Officer Sanderson's investigatory stop was not supported by a reasonable and articulable suspicion that criminal behavior had occurred or was imminent. For the reasons that follow, we disagree.

**{¶ 17}** A police officer may stop or detain an individual without probable cause when the officer has reasonable suspicion based on specific, articulable facts that criminal activity is afoot. *Terry* at 16. Accordingly, an "investigatory stop does not violate the Fourth Amendment * * * if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.'" *State v. Jordan*, 104 Ohio St.3d 21,

35, 2004-Ohio-6085, 817 N.E.2d 864, quoting *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621.

{¶ 18} Reasonable suspicion entails some minimal level of objective justification, "that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones* (1990), 70 Ohio App.3d 554, 556-557, 591 N.E.2d 810, citing *Terry* at 27. Accordingly, "'a police officer may not rely on good faith and inarticulate hunches to meet the *Terry* standard of reasonable suspicion." *Jones* at 557. Reasonable suspicion requires that the officer "point to specific, articulable facts which, together with rational inferences from those facts, reasonably warrant the intrusion." Id., citing *Terry* at 21.

{¶ 19} "In making a determination of reasonable suspicion, the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." *State v. Taylor* (1995), 106 Ohio App.3d 741, 747-749, 667 N.E.2d 60. An appellate court views the propriety of a police officer's investigative stop in light of the totality of the surrounding circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus, approving and following *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus. "Assessing the need for a brief stop, 'the circumstances * * * before [the officer] are not to be dissected and viewed singly; rather they must be considered as a whole.'" *Freeman* at 295, quoting *United States v. Hall* (C.A.D.C.1976), 525 F.2d 857, 859. Officers may "draw on their own experience and specialized training

to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu* (2002), 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740, quoting *Cortez* at 418.

{¶ 20} Based on the examination of the "totality of the surrounding circumstances," the officers in this case were justified to engage in a brief investigatory stop of appellant. The record reflects that the officers reasonably believed that the white vehicle parked outside the victim's home was connected to the reported domestic violence altercation. However, upon arriving at the scene of the altercation, the officers were unable to determine the extent of the white vehicle's involvement in the purported crime and were justified to monitor the vehicle with caution once they observed two unidentified individuals inside the vehicle. During the suppression hearing, Officers Sanderson and Alford testified that, in their experience, domestic violence situations frequently involve violent and chaotic situations. Therefore, in light of the facts known to the officers at the time they arrived at the scene, it was reasonable for them to fear the presence of a weapon on the reported suspect and/or the individuals located within the vehicle.

{¶ 21} Faced with a potentially violent and unpredictable situation late at night, coupled with Starks's physical resistance to a pat down and appellant's simultaneous furtive movements in the vehicle believed to be connected to the crime, we find that the officers had articulable grounds to suspect criminal activity. The officers testified that appellant's furtive movements were consistent with an individual reaching for a weapon.

In these situations, a brief investigatory stop of a suspicious individual, in order to maintain the status quo momentarily while obtaining more information, is reasonable and is in the best interests of the officers' safety. *Adams v. Williams* (1972), 407 U.S. 143, 145-46, 92 S.Ct. 1921, 32 L.Ed.2d 612. Accordingly, we conclude that the officers did not abridge the protections guaranteed by the Fourth Amendment. Hence, the trial court did not err in denying the motion to suppress.

{¶ 22} Appellant's first assignment of error is overruled.

## II

{¶ 23} In his second assignment of error, appellant argues that the trial court erred by denying his motion to dismiss where R.C. 2921.331(B) is unconstitutional as applied to the present facts and circumstances.

{¶ 24} Any constitutional analysis must begin with the presumption of constitutionality enjoyed by all legislation. *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶25. Before a court may declare an enactment of the legislative branch unconstitutional, "it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." Id., quoting *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 128 N.E.2d 59, paragraph one of the syllabus. An appellate court gives no deference to a trial court's decision regarding the constitutionality of a statute and reviews the issue de novo. *Medina v. Szwec*, 157 Ohio App.3d 101, 2004-Ohio-2245, 809 N.E.2d 78, ¶4.

**{¶ 25}** "A statute may be challenged as unconstitutional on the basis that it is invalid on its face or as applied to a particular set of facts. See, e.g., *United States v. Eichman* (1990), 496 U.S. 310, 312, 110 S.Ct. 2404, 110 L.Ed.2d 287. In an as-applied challenge, the challenger 'contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, [is] unconstitutional.' *Ada v. Guam Soc. of Obstetricians & Gynecologists* (1992), 506 U.S. 1011, 113 S.Ct. 633, 121 L.Ed.2d 564 (Scalia, J., dissenting)." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶17. Thus, we focus on the statute and its particular application in an as-applied challenge.

**{¶ 26}** The challenged statute, R.C. 2921.331(B), provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."

**{¶ 27}** Appellant contends that, under the plain language of the statute, the trial court unconstitutionally applied the statute to him where the state failed to establish that he "operated" the vehicle, as defined by the Ohio Revised Code, at the time Officer Sanderson ordered him to stop. In doing so, appellant relies on *State v. Ozinga*, Ashtabula App. No. 2008-A-0038, 2009-Ohio-181, and *State v. Schultz*, Cuyahoga App. No. 90412, 2008-Ohio-4448. In *Ozinga* and *Schultz*, both the Eleventh District and this court stated that, effective January 1, 2004, the term "operate," as used in Ohio's OVI laws under Chapter 4511 of the Ohio Revised Code, was amended by the General

Assembly to mean: "to cause or have caused *movement* of a vehicle, streetcar, or trackless trolley." (Emphasis added.) *Ozinga* at ¶20; *Schultz* at ¶30. In amending the definition of "operate" in R.C. 4511.01, a defendant can no longer be convicted of an OVI violation if only the engine of the vehicle is on; rather, movement of the defendant's vehicle must be found by the finder of fact. Id.

{¶ 28} Essentially, appellant contends that the definition of "operate" found in R.C. 4511.01 is equally applicable to R.C. 2921.331 and, therefore, a conviction for eluding or fleeing cannot be constitutionally applied to a situation where an officer orders a defendant to stop a parked vehicle. However, appellant's argument focuses solely on Officer Sanderson's initial order to turn off the engine of the parked vehicle and fails to consider Officer Sanderson's subsequent conduct once appellant attempted to flee the scene.

{¶ 29} In our view, Officer Sanderson's discharge of his weapon constituted a secondary visual signal for appellant to stop the operation of the vehicle at the time appellant was in fact moving the vehicle. Therefore, appellant's contention that the order to stop the operation of the vehicle was given at a time when the vehicle was not moving is without merit. Accordingly, a constitutional interpretation of whether R.C. 2921.331(B) can be constitutionally applied to a factual scenario where there is no "movement" of a vehicle, as required by the definition of "operate" in R.C. 4511.01(HHH), is unnecessary in this matter. In light of the facts and circumstances presented at trial, we find that R.C. 2921.331(B) was constitutionally applied to appellant.

{¶ 30} Appellant's second assignment of error is overruled.

### III

{¶ 31} In his third assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. In determining whether a conviction is against the manifest weight of the evidence, an appellate court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

{¶ 32} A weight-of-the-evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717; see, also, *Otten*, at id.

{¶ 33} In challenging his conviction on manifest weight grounds, appellant relies on the arguments raised in his constitutional challenge, claiming that he was not

"operating" the vehicle under the current state of the law.   However, as discussed, we are unpersuaded by appellant's interpretation of the facts in this matter.

{¶ 34} After examining the entire record, weighing the evidence and all reasonable inferences, we are unable to conclude that the court clearly lost its way and created a manifest miscarriage of justice in convicting appellant pursuant to R.C. 2921.331(B). The record reflects that upon seeing appellant make a furtive movement towards the driver's seat of the vehicle, Officer Sanderson began to walk toward the vehicle in order to assess the situation.   At that moment, appellant started the vehicle's engine, and Officer Sanderson positioned himself in front of the driver's side window and drew his weapon.   Officer Sanderson testified at trial that he then ordered appellant to "Stop. Turn off the car."   Seconds later, appellant disobeyed Officer Sanderson's initial order and accelerated the car away from the officers.   Concerned for his safety, Officer Sanderson fired a shot into the driver's side windshield while the vehicle was moving. The testimony of Officer Sanderson was further corroborated by Officer Alford.

{¶ 35} In light of the testimony presented at trial, we find that, in addition to Officer Sanderson's initial audio signal to turn the vehicle's engine off, Officer Sanderson's position at the front of the vehicle and the firing of his weapon at the moving vehicle constituted visual signals to appellant to stop the operation of the vehicle.   Rather than comply with the officer's order, appellant made the conscious and willful decision to elude the officers and flee the scene of the domestic violence altercation.   Accordingly,

we are not persuaded by appellant's argument that his conduct did not violate R.C. 2921.331(B) under the plain language of the statute.

{¶ 36} Appellant's third assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

JAMES J. SWEENEY, J., and
KATHLEEN ANN KEOUGH, J., CONCUR