[Cite as *State v. Rudder*, 2023-Ohio-993.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellant | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| TATIANA RUDDER | : | Case No. 2022CA00027 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Municipal Court, Case No. TRC 22 00408


JUDGMENT:      Reversed


DATE OF JUDGMENT:      March 27, 2023


APPEARANCES:

For Plaintiff-Appellant

JAMES E. YOUNG
136 West Main Street
P.O. Box 1008
Lancaster, OH  43130

For Defendant-Appellee

DARREN L. MEADE
2602 Oakstone Drive
Suite 1
Columbus, OH  43231

*King, J.*

{¶ 1}   Plaintiff-Appellant the state of Ohio appeals the December 7, 2022 judgment of the Municipal Court of Fairfield County granting Defendant-Appellee Tatiana Rudder's motion to suppress.

### Facts and Procedural History

{¶ 2}   The transcript of the suppression hearing and the body camera video of Ohio State Highway Patrol Trooper M.P. Herdman provide the following facts.

{¶ 3}   On January 16, 2022 at 11:54 p.m., Trooper Herdman was dispatched to the scene of a possible disabled vehicle near U.S. 33 and Diley Road in Fairfield County Ohio. On that evening, it was snowing heavily. The roads were snow covered and the area was under a level 2 snow emergency.

{¶ 4}   Upon arrival, Trooper Herdman located the vehicle, a silver 2015 Hyundai, near the off ramp, and positioned at the bottom of a steep embankment approximately 100 feet off of the roadway. It appeared to Herdman that the vehicle had slid off the road. As Herdman approached the Hyundai, Rudder exited the vehicle from the back seat. Herdman noticed Rudder was having difficulty with balance and was using the car to steady herself.

{¶ 5}   Once Herdman approached Rudder, he noticed a strong odor of alcohol, and the fact that her eyes were red and glassy with contracted pupils. Her speech was slow and slurred.

{¶ 6}   Rudder was unable to produce a driver's license, but the Hyundai was registered in her name. At the point of Herdman's contact, Rudder was on the phone with her boyfriend Adonis whom she had called to come and pick her up. Each time Herdman

asked Rudder how much she had to drink she replied that Adonis had nothing to drink. She then handed Herdman the phone. Herdman directed Adonis to their location.

{¶ 7}   Herdman assisted Rudder up to the road near his cruiser as she was having difficulty walking and asked for his assistance. Asked again how much she had to drink, Rudder said she may have had a glass of wine. She apologized repeatedly. By this time, Adonis had arrived on the scene and remained close by.

{¶ 8}   Due to the weather and road conditions, Herdman did not ask Rudder to perform the one-leg stand or walk and turn test. He did however, administer the horizontal gaze nystagmus test. Rudder had difficulty following Herdman's directions during the test and Herdman noted 6 of 6 clues of intoxication. Rudder was therefore placed under arrest.

{¶ 9}   Herdman advised Adonis that he would be transporting Rudder to the Diley Ridge Medical Center for processing and then she would be released to him. He directed Adonis to meet them at the hospital. Instead of going directly to his own vehicle, Adonis went first to Rudder's vehicle, opened the driver's side door and reached inside. Herdman asked Adonis to step away from the car, advising he would handle the matter of the vehicle.

{¶ 10} After Rudder was secured in Herdman's cruiser, Herdman went to Rudder's car to turn off the hazard lights and retrieve the keys. Finding no keys he returned to his cruiser and asked Rudder where her keys were. She stated they were in her purse, in the car. Herdman again searched the car and the ground around the car but found neither a purse, nor Rudder's keys.

{¶ 11} Upon arrival at the hospital, Herdman asked Adonis if he had taken Rudder's keys and purse. Adonis denied the same. Rudder later refused a urine screen and was thereafter released from custody.

{¶ 12} Rudder was subsequently charged with operating a vehicle under the influence. On February 22, 2022, Rudder filed a motion to suppress advancing four arguments. Relevant to this appeal, Rudder argued Herdman lacked probable cause to arrest her for operating a vehicle while impaired.

{¶ 13} A hearing was held on the motion on June 3, 2022. Trooper Herdman was the sole witness.

{¶ 14} On July 21, 2022, the trial court issued its judgment entry granting Rudder's motion to suppress. The court noted Trooper Herdman never observed Rudder in the front seat or behind the wheel of the vehicle. It further noted the vehicle was not running when Herdman arrived, there was no testimony that anyone had seen the vehicle in motion, no indication how long it had been at the side of the road, or that the vehicle was operable. For these reasons, the trial court found Trooper Herdman lacked probable cause to arrest Rudder for operating under the influence.

{¶ 15} The state filed an appeal and the matter is now before this court for consideration. The state raises one assignment of error as follows:

I

{¶ 16} "THE TRIAL COURT ERRED IN FINDING TROOPER HERDMAN LACKED PROBABLE CAUSE TO ARREST FOR AN OVI UNDER R.C. 4511.19 AND THEREFORE ERRED IN GRANTING APPELLEE'S MOTION TO SUPPRESS."

{¶ 17} In its sole assignment of error, the state argues the trial court erred in finding Trooper Herdman lacked probable cause to arrest Rudder. We agree.

{¶ 18} We review the question of whether an officer has reasonable suspicion or probable cause to make a warrantless arrest de novo. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). However, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.*

{¶ 19} "The standard for determining whether the police have probable cause to arrest an individual for OVI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonable trustworthy source of facts and circumstances to cause a prudent person to believe that the suspect was driving under the influence." *State v. Swope*, 5th Dist. Fairfield No. 08 CA 50, 2009-Ohio-3849, ¶ 22.

{¶ 20} In *State v. Anthony*, 5th Dist. Stark No. 2015CA00226, 2016-Ohio-2905, an appeal from a conviction for OVI, the appellant challenged the manifest weight and sufficiency of the evidence against him, specifically the "operation" element of OVI. This court noted:

> "Effective January 1, 2004, the term 'operate' as used in R.C. Chapter 4511, 'means to cause or have caused movement of a vehicle * * *.' R.C. 4511.01(HHH). This modification narrows the definition of 'operate,' which effectively eliminates 'drunk radio listeners, or people who use their cars as a four-wheeled, heated

hotel room' from being convicted of OVI. *Gill,* 70 Ohio St.3d at 157-158, 637 N.E.2d 897 (Pfeifer, J., dissenting)." *State v. Barnard*, 5th Dist. Stark No. 2010-CA-00082, 2010-Ohio-5345, 2010 WL 4347572, ¶ 25, quoting *State v. Schultz*, 8th Dist. Cuyahoga No. 90412, 2008-Ohio-4448, 2008 WL 4078447, ¶ 19. (Footnotes omitted).

"Notably, and in relation to movement of a vehicle, R.C. 4511.01(HHH) employs both the present tense ('to cause') and, alternatively, the past tense (to 'have caused'), in defining the conduct to which that section applies. The past tense indicates action already completed. For purposes of R.C. 4511.19, to 'have caused' movement of a vehicle is a fact that may be proved by circumstantial evidence, which inherently possesses the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492." *State v. Halpin*, 2nd Dist. Clark App. No. 07CA78, 2008-Ohio-4136, 2008 WL 3583349, ¶ 24; *Barnard*, 2010-Ohio-5345, 2010 WL 4347572, ¶ 29.

As our brethren in the Eight District has recognized,

Today, the difference between an OVI and a physical control violation, besides the penalties, is that an OVI requires actual movement of the vehicle, whereas a physical control violation does not. After January 1, 2004, if there is no evidence that the person

moved or caused the vehicle to move, that person cannot be convicted of OVI, but may be convicted of being in physical control of a vehicle while under the influence. Still, a person who is found passed out in his vehicle on the side of the highway may be convicted of an OVI because a jury could infer that the vehicle was moved to that location. However, if a person decides to "sleep it off" in the parking lot of the bar where the person drank, the person could be convicted only of a physical control violation, unless there is evidence of movement.

*State v. Schultz*, 8th Dist. Cuyahoga No. 90412, 2008-Ohio-4448, 2008 WL 4078447, ¶ 25.

{¶ 21} Here, the issue is probable cause to arrest, not sufficiency of the evidence following a trial. We have reviewed the transcript of the suppression hearing and viewed the entirety of Herdman's body camera video and find there is evidence that Rudder had recently caused the vehicle to move. The body camera video shows Rudder's car, not in the parking lot of a bar where she may have been "sleeping it off," "a drunk radio listener" utilizing her car as "a four-wheeled heated hotel room," but rather alone at the side of an interstate highway in a snow storm. Other than emergency vehicles, there is not even any passing traffic. The hazard lights of Rudder's car were on and there was evidence indicating she had recently either driven off the road or slid off the road. Further, she was on the telephone attempting to direct her boyfriend to her location to help her. She demonstrated signs of impairment. While the trial court partially relied upon the fact that

no keys were found, Rudder's boyfriend was in Rudder's Hyundai before he left for the hospital making the issue of the absence or presence of the keys much less clear. Finally, although Rudder was seen exiting the car from the back seat, as previously noted, there was evidence of recent movement of the car.

{¶ 22} Given the forgoing, we find Trooper Herdman was presented with sufficient information to cause him to believe Rudder was driving under the influence providing him with probable cause to arrest.

{¶ 23} The sole assignment of error is sustained.

{¶ 24} The judgment of the Fairfield County Municipal Court is reversed.

By King, J.,

Wise, P.J. and

Baldwin, J. concur.

AJK/rw