[Cite as *In re B.A.R.*, 2013-Ohio-5712.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


| In the Matter of: | : | |
|---|---|---|
| | | No. 13AP-396 |
| B.A.R., | : | (C.P.C. No. 12JU-03-03410) |
| (Appellant). | : | (REGULAR CALENDAR) |

---

D E C I S I O N

Rendered on December 24, 2013

---

*William T. Cramer*, for appellant.

*Ron O'Brien*, Prosecuting Attorney, and *Katherine J. Press*, for appellee.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

SADLER, J.

{¶ 1} Defendant-appellant, B.A.R., a juvenile, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, wherein the juvenile court adjudicated appellant a delinquent minor for carrying a concealed weapon and resisting arrest. For the following reasons, we affirm the judgment of the trial court.

I. BACKGROUND

{¶ 2} Plaintiff-appellee, the State of Ohio, filed a delinquency complaint against appellant charging him with carrying a concealed weapon, in violation of R.C. 2923.12(A)(2), and resisting arrest, in violation of C.C.C. 2321.33(A). Appellant filed a motion to suppress on March 22, 2012 and a supplemental motion to suppress on April 27, 2012, alleging, relevant to this appeal, "that the warrantless search of his person based on an anonymous tip was a violation of his constitutional rights and the evidence

should be suppressed." (Apr. 27, 2012 Supplement to Motion to Suppress, 2.) Appellee responded, arguing officers had reasonable suspicion to conduct an investigative stop. The trial court held a hearing on the motion, wherein the following evidence was presented.

{¶ 3} On March 10, 2012, Columbus Police Officer Bill Graham was working special duty at a branch of the Columbus Library on Livingston Avenue. According to Officer Graham, while walking towards the door in the library vestibule, a library patron ("informant") approached and informed him that a group of "guys" had a firearm, were in the library restroom "for * * * less than two seconds," and had "just left" the library. (Tr. 9, 12.) Officer Graham was asked specifically if he thought the informant was lying and stated: "He appeared to be genuine. I mean, he appeared to be a concerned citizen. He had been in the library for awhile." (Tr. 21.) According to Officer Graham, "[d]ue to the circumstances, I didn't waste time to ask him for his name or any other identification. He said there was a gun. * * * [M]y main concern was were they coming back in the library with a gun." (Tr. 10.) Officer Graham also testified he would recognize the informant if he saw him again.

{¶ 4} Immediately after receiving the tip, Officer Graham looked outside and observed three juveniles matching the description given by the informant walking up the path to the library. "As soon as they saw me they turned right around and moved quickly across the street." (Tr. 13.) Additionally, Officer Graham stated that these juveniles "had been a problem the entire time they were in [the library]." (Tr. 21.)

{¶ 5} Concerned the juveniles would re-enter the library with a firearm, Officer Graham began walking library patrons to their vehicles and aired for assistance over the radio. Other officers, including Columbus Police Officer Amanda Kasza, arrived to assist. According to Officer Graham, once he finished escorting patrons to their vehicles, he assisted the other officers. Officer Graham observed Officer Kasza "patting [appellant] down for weapons" and recover a firearm. (Tr. 15.) Officer Graham also testified that appellant "began to struggle with [Officer Kasza] as she was trying to handcuff him." (Tr. 15.)

{¶ 6} According to the testimony of Officer Kasza, she responded in less than a minute to Officer Graham's request for assistance. Officer Kasza stated the police

dispatch informed her that another officer "had been flagged down with a statement," that "three male blacks [were] in the library, one of them had a gun," and they were "starting to walk into the street." (Tr. 25, 30.) According to Officer Kasza, she was also provided with a clothing description for two of the males. Upon arriving at the scene, Officer Kasza testified that she encountered a juvenile group that matched the previous description given to her. Officer Kasza observed the juveniles for approximately ten seconds and detained them. Officer Kasza "patted them down for weapons and officer safety." (Tr. 27.) While patting down appellant, Officer Kasza testified she discovered a firearm and a loaded magazine.

{¶ 7} The suppression hearing concluded with closing statements. Appellee, relying upon *Maumee v. Weisner*, 87 Ohio St.3d 295 (1999), and *State v. Ramey*, 129 Ohio App.3d 409 (1st Dist.1998), argued the informant was an "identified citizen informant," and, thus, the tip had sufficient indicia of reliability to justify an investigative stop. (Tr. 57.) Therefore, appellee argued appellant's motion to suppress must be denied. In response, appellant relied upon *Florida v. J.L.*, 529 U.S. 266 (2000), and argued an anonymous in-person tip should be treated the same as a tip received from an anonymous caller. Because the officers did not gather additional corroborating evidence of the tip, appellant asserted they lacked reasonable suspicion to conduct an investigative stop.

{¶ 8} After the magistrate overruled appellant's motion to suppress, "[t]he parties then stipulated that the testimony matched the allegations in the complaint," and the magistrate adjudicated appellant delinquent for carrying a concealed weapon and resisting arrest. (Appellant's Brief, 1.) Appellant filed objections to the magistrate's decision and appellee filed a response. In overruling appellant's objections, the trial court found "the Magistrate did not err in classifying the [informant] as an identifiable informant" and that "[b]ased on the totality of the circumstances, * * * that the information provided by the [informant], coupled with Officer Graham's prior experience with [appellant] and his friends * * *, provided him with reasonable suspicion to air for help and for Officer Kasza to subsequently make the stop." (Feb. 8, 2013 Decision and Entry, 7, 8.) This appeal followed.

## II. ASSIGNMENT OF ERROR

{¶ 9} Appellant brings the following assignment of error for our review:

> Appellant's right to be free from unreasonable searches and seizures under the Fourth Amendment to the U.S. Constitution and Article I, Section 14 of the Ohio Constitution was violated when the police conducted an investigatory stop based on an anonymous tip without first corroborating the allegations of criminal conduct.

## III. STANDARD OF REVIEW

{¶ 10} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of fact finder and, accordingly, is in the best position to resolve factual questions and evaluate witness credibility." *Columbus v. Body*, 10th Dist. No. 11AP-609, 2012-Ohio-379, ¶ 9, citing *Burnside* at ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). As such, an appellate court must accept the trial court's factual findings if they are supported by competent, credible evidence. *Id.,* citing *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982).

{¶ 11} "Accepting these facts as true, the reviewing court must then independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard." *Id.*, citing *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

## IV. DISCUSSION

{¶ 12} In his sole assignment of error, appellant argues he was seized in violation of the Fourth Amendment to the United States Constitution, as well as Article 1, Section 14 of the Ohio Constitution. Specifically, appellant asserts the trial court should have suppressed all evidence obtained from the alleged unconstitutional investigative stop and pat down of his person because the officers lacked reasonable suspicion to conduct an investigative stop based solely on an in-person tip from an anonymous informant.

{¶ 13} The Fourth Amendment to the United States Constitution, as well as Article I, Section 14 of the Ohio Constitution, prohibits unreasonable searches and seizures and generally provides co-extensive protections. *State v. Robinette*, 80 Ohio St.3d 234, 238-39 (1997); *State v. Kinney*, 83 Ohio St.3d 85, 87 (1998); *Katz v. United States*, 389 U.S.

347, 351 (1967).  Warrantless searches and seizures are, per se, unreasonable unless a specific exception applies.  *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993).

{¶ 14} The investigative stop exception to the Fourth Amendment warrant requirement permits a police officer to stop an individual, provided the officer had the requisite reasonable suspicion based upon specific, articulable facts that a crime has occurred or is imminent.  *Terry v. Ohio*, 392 U.S. 1, 21 (1968).  "[R]easonable suspicion" is a term of art that is not " 'readily, or even usefully, reduced to a neat set of legal rules.' " *United States v. Sokolow*, 490 U.S. 1, 7 (1989), quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  The term connotes something less than probable cause, but something more than an "inchoate and unparticularized suspicion or 'hunch.' " *Terry* at 27.  Whether the police acted with "reasonable suspicion" requires consideration of the totality of the circumstances.  *United States v. Cortez*, 449 U.S. 411, 417 (1981).

{¶ 15} A police officer may rely upon a police dispatch when making an investigative stop and "need not always have knowledge of the specific facts justifying a stop."  *Weisner* at 297, citing *United States v. Hensley*, 469 U.S. 221, 231 (1985.)  "[T]he admissibility of the evidence uncovered during such a stop does not rest upon whether the officers *relying upon a dispatch or flyer* 'were themselves aware of the specific facts which led their colleagues to seek their assistance.'  It turns instead upon 'whether the officers who *issued* the flyer' or dispatch possessed reasonable suspicion to make the stop."  (Emphasis sic.)  *Id.*, quoting *Hensley* at 231.  Thus, " 'if the [dispatch] has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment.' " *Id.*, quoting *Hensley* at 232.

{¶ 16} Here, the information possessed by Officer Graham before the stop stems, in large part, from an anonymous informant's in-person tip.  Thus, under these circumstances, "[t]he appropriate analysis * * * is whether the tip itself has sufficient indicia of reliability to justify the investigative stop."  *Id.* at 299.  Factors that should be considered in determining the value of the informant's tip are the informant's "veracity, reliability, and basis of knowledge."  *Id.*, citing *Alabama v. White*, 496 U.S. 325, 328 (1990).  In assessing the weight and credibility of a tip, "courts have generally identified three classes of informants: the anonymous informant, the known informant (someone from the criminal world who has provided previous reliable tips), and the identified

citizen informant."  *Id.* at 300.  Generally speaking, an anonymous informant is less reliable and, therefore, such a tip may require independent corroboration, whereas an identified citizen informant is likely highly dependable, and a tip therefrom may not warrant other indicia of reliability.  *Id.*, citing *White* at 329.  However, "the distinctions between these categories are somewhat blurred," and the category of the informant is only a consideration in the totality of the circumstances analysis.  *Id.*

{¶ 17} We first address appellant's assertion that the trial court's decision "contains a number of factual errors that may have impacted the outcome."  (Appellant's Brief, 16.)  Specifically, appellant asserts the trial court's decision incorrectly concludes that the informant was a " 'regular patron' of the library," and that "may have contributed to the court's erroneous conclusion that the informant was 'identifiable.' "  (Appellant's Brief, 16.)  Moreover, appellant argues the trial court incorrectly concluded that the informant provided an "eye witness account of the boys in the restroom with the gun."  (Appellant's Brief, 18.)  An appellate court must accept the factual findings of the trial court if they are supported by competent, credible evidence.  *Body* at ¶ 9.

{¶ 18} The trial court found that the informant was a "regular patron of the library."  (Feb. 8, 2013 Decision and Entry, 7.)  Appellant argues this finding led the trial court to incorrectly conclude that the informant was "identifiable."  According to Merriam-Webster's Dictionary, included among the many meanings of the word "regular," are "recurring" and "normal."  While the intended meaning of the trial court is not entirely clear, appellant assumes the trial court intended the former definition.  Regardless of the trial court's intended meaning, we find sufficient evidence in the record elsewhere that the informant was "identifiable" as discussed below.  Thus, we need not decipher the trial court's intended meaning, as it is not dispositive of our decision that the informant was "identifiable."

{¶ 19} A review of Officer Graham's testimony provides support for the remainder of the trial court's challenged factual findings.  According to Officer Graham, he observed the informant inside the library earlier, and the informant had been in the library for "awhile."  (Tr. 21.)  Officer Graham also testified that he remembered what the informant looked like and would recognize him if he went out to look for him or if he saw him again.  Lastly, Officer Graham testified the informant stated that a group of "guys" had a firearm

and were in the library restroom "for like less than two seconds" and had "just left" the library.  (Tr. 9, 12.)  Thus, we find the record contains competent, credible evidence to support the trial court's finding that the informant was identifiable and personally witnessed "the boys in the restroom with the gun," and we accept the trial court's factual findings in this regard.  (Feb. 8, 2013 Decision and Entry, 7.)

{¶ 20} Appellant next argues the informant's tip possessed insufficient indicia of reliability to justify the investigative stop.  In support, appellant relies on *J.L.*

{¶ 21} In *J.L.*, the police received a tip from an anonymous caller "that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *Id.* at 268.  The officers had no other information about the anonymous caller, and, based solely on that tip, officers frisked the defendant and found a weapon.  The court determined "[a]ll the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about [the defendant]."  *Id.* at 271.  The court held that, without more information from the informant "to test the informant's knowledge or credibility" or without any other behaviors observed by the officers that would indicate criminal activity may be occurring, the officers lacked reasonable suspicion to make an investigative stop.  *Id.*

{¶ 22} We find the instant case distinguishable from *J.L.* in several important respects.  First, the informant in this case did not make an anonymous phone call; rather, he approached Officer Graham in the vestibule of the library after personally discovering appellant had a firearm.  Second, the informant in this case was able to provide more than a mere clothing description and, rather, pointed out the specific individuals he observed with a firearm, stating to Officer Graham, "those guys that just left, one of them has a gun."  (Tr. 9.)  Further, as we previously indicated, Officer Graham was aware the informant had been in the library for "awhile" and personally observed the informant in the library "earlier" that day.  Because the informant presented himself in person to Officer Graham, Officer Graham was able to assess the informant's demeanor and credibility, describing the informant as "genuine" and a "concerned citizen" who, if he saw again, he would recognize.  (Tr. 21.)  Moreover, it was not the informant who refused to provide identifying information, but Officer Graham who, "[d]ue to the circumstances,

* * * didn't waste time to ask him for his name or any other identification."   (Tr. 10.) Thus, in light of the above, we find the present case distinguishable from *J.L.*

{¶ 23}  In our view, analogous to the present case are *Henness v. Bagley*, 644 F.3d 308 (6th Cir.2011), and *Ramey*.

{¶ 24}  In *Henness*, an unidentified individual approached a police officer on the street and "told him that a white male in a green trench coat had just threatened to shoot him."  *Id.* at 318.  The officer proceeded in the direction of the incident and "spotted a white male in a green trench coat walking toward him."  *Id.*  The officer stopped the defendant, patted him down, and, upon finding a knife in his coat pocket, arrested him. The defendant argued "that the information provided by the unidentified individual did not provide a sufficient basis for Officer Gravett to stop and search him" and, as such, constituted a violation of his Fourth Amendment rights.  *Id.*  Specifically, the defendant argued the anonymous in-person tip was equivalent to an anonymous tip provided over the phone and, therefore, lacked sufficient indicia of reliability to justify an investigative stop.

{¶ 25}  In holding "[a]n officer may rely on a complaint made by an individual whose name the officer does not know, but who made the complaint in open view of the officer," the *Henness* court outlined three key differences between anonymous tips provided over the phone and those given face-to-face with an officer.  *Id.*  First, "[a]n in-person tip gives the officer an opportunity to observe the informant's demeanor and credibility."  *Id.*  Second, "[t]he in-person informant risks being held accountable for false information."  *Id.*  Finally, "an in-person informant's proximity in time and space to the reported criminal activity indicates the reliability of the tip, because it reflects that the informant acquired the information firsthand."  *Id.*

{¶ 26}  In *Ramey*, an officer made "an investigatory stop of the vehicle based solely upon" two radio transmissions.  *Id.* at 413.  "The first transmission was a call-in by * * * [a] police officer that a passerby had flagged him down to report that a gold Honda with a certain license-plate number travelling along State Route 50 was 'a possible DUI.' "  *Id.* The second transmission was a "be on the lookout" transmission from a separate police jurisdiction and, again, described the vehicle, its direction of travel, and stated it was a "possible DUI."  *Id.*  On appeal, the defendant argued the trial court erred by failing to

grant his motion to suppress. "Specifically, [the defendant] argue[d] that a citizen tip that his vehicle had been observed driving erratically, relayed over the police radio, lacked sufficient corroboration to justify the subsequent investigatory stop of his vehicle that led to his arrest." *Id.* at 412.

{¶ 27} In affirming the trial court's denial of the motion to suppress, the court determined that this case fell into the identified " 'citizen-informant' " category. *Id.* at 416. The court reasoned that " '[i]nformation from ordinary citizens who have personally observed what appears to be criminal conduct carries with it an indicia of reliability and is presumed to be reliable.' " *Id.* at 416, quoting *State v. Oney*, 1st Dist. No. C-940332 (Feb. 15, 1995). The court continued, "[t]here is nothing even remotely anonymous, clandestine, or surreptitious about a citizen stopping a police officer on the street to report criminal activity." *Id.*

{¶ 28} Here, Officer Graham testified the informant was a "concerned citizen" who approached him in the library vestibule. (Tr. 27.) Additionally, Officer Graham had the opportunity to assess the informant's "demeanor and credibility," describing him as a genuinely concerned citizen. *Henness* at 319. By approaching Officer Graham in person, "the [informant] risked being held accountable for providing false information." *Id.* Finally, the informant reported information concerning suspected criminal activity that had recently occurred in the vicinity. " 'Information from ordinary citizens who have personally observed what appears to be criminal conduct carries with it an indicia of reliability and is presumed to be reliable.' " *Ramey* at 416, quoting *Oney*. Moreover, in this case, when specifically asked if the group was acting "out [of] the ordinary" once they spotted him moving towards them, he responded, "[t]hey were moving with pace. As soon as they saw me they turned right around and moved quickly across the street." (Tr. 13.) "Nervous, evasive behavior is another pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

{¶ 29} In light of the evidence presented, like *Henness*, the informant here made the complaint in open view of the officer and, like the informant in *Ramey*, falls into the category of an identified citizen informant. Therefore, the officers involved were not required to find additional evidence corroborating the informant's tip before conducting the investigative stop. Thus, based on the totality of the circumstances, we conclude the

trial court did not err in concluding the officers possessed reasonable suspicion to conduct the investigative stop of appellant.

{¶ 30} Accordingly, we find the trial court properly denied appellant's motion to suppress and overrule appellant's assignment of error.

## V. CONCLUSION

{¶ 31} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

DORRIAN and O'GRADY, JJ., concur.

_____