[Cite as *State v. Bosher*, 2014-Ohio-2285.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 13AP-1000 |
| v. | : | (M.C. No. 2013 TRC 150255) |
| John F. Bosher, Jr., | : | (ACCELERATED CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on May 29, 2014

*Richard C. Pfeiffer, Jr.*, City Attorney, and *Melanie R. Tobias*, for appellant.

*Michael A. Marrocco*, for appellee.

APPEAL from the Franklin County Municipal Court

O'GRADY, J.

{¶ 1} Plaintiff-appellant, the State of Ohio, appeals from a judgment of the Franklin County Municipal Court that granted a motion to suppress filed by defendant-appellee, John F. Bosher, Jr. For the following reasons, we reverse in part the trial court's judgment and remand for further proceedings.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} On June 18, 2013, shortly before 2:00 a.m., Trooper Paul Barnes with the Ohio State Highway Patrol was on patrol when he observed appellee's vehicle make a wide turn out of the parking lot of Average Joe's bar. Trooper Barnes followed the vehicle. At the intersection of Polaris Parkway ("Polaris") and Sancus Boulevard ("Sancus"), Trooper Barnes stopped behind appellee's vehicle in the left-most of two left-turn lanes on Sancus.

One vehicle separated the trooper's vehicle from appellee's vehicle. Appellee's vehicle made a wide left turn into the center lane on Polaris instead of turning into the left lane on Polaris. Trooper Barnes followed the vehicle for another mile or two, during which time he observed appellee's vehicle weaving within its lane, "touching line to line." (Tr. 7.) He also noticed appellee's vehicle did not have a license plate light. When Trooper Barnes activated his overhead lights, appellee's vehicle stopped without incident.

{¶ 3} Trooper Barnes made contact with appellee, the driver and only occupant of the vehicle, at the driver's side window. As appellee rolled down the window, the trooper smelled a "strong odor of an alcoholic beverage coming from within the vehicle." (Tr. 7-8.) Trooper Barnes observed that appellee's eyes were bloodshot and glassy. Appellee had no difficulty locating his license and registration and giving those items to Trooper Barnes, and appellee's speech was not slurred. Appellee told Trooper Barnes he was coming from Average Joe's bar where he had "several beers." (Tr. 11.) Trooper Barnes had appellee exit his vehicle and perform field sobriety tests ("FSTs"), i.e., the horizontal gaze nystagmus ("HGN") test, the walk-and-turn, and the one-leg stand. Subsequently, Trooper Barnes arrested appellee, and appellee took a breath test.

{¶ 4} Appellee was charged with one count each of operating a vehicle under the influence ("OVI"), in violation of R.C. 4511.19(A)(1)(a); OVI per se, in violation of R.C. 4511.19(A)(1)(d); and a turn violation, in violation of R.C. 4511.36. He entered a not guilty plea and filed a motion to suppress. At a partial hearing on the motion, the parties stipulated the HGN test was not administered in substantial compliance with National Highway Traffic Safety Administration standards, but the one-leg stand and walk-and-turn tests were. Therefore, the issues for the court's consideration at the hearing were reasonable suspicion for the initial traffic stop, the propriety of appellee's further detention and arrest, and the admissibility of the breath test. Trooper Barnes testified to the above version of events. Subsequently, the trial court orally ruled Trooper Barnes had reasonable suspicion to initiate the traffic stop for the alleged turn violation at the intersection of Sancus and Polaris but that there were not enough indicators of impairment to detain appellee for FSTs. The court recessed the motion hearing as its ruling made it unnecessary to hear additional evidence appellant had on matters such as the breath test. Subsequently, the court issued a judgment entry granting the motion to

suppress. The court found reasonable suspicion for the initial stop but no "probable cause" for appellee's continued detention for FSTs and arrest. (R. 33, at 3.) The court made no findings regarding the administration of the FSTs or breath test.

## II. ASSIGNMENT OF ERROR

{¶ 5} Appellant, pursuant to R.C. 2945.67(A) and Crim.R. 12(K), appeals the trial court's ruling and assigns the following error for our review:

> THE TRIAL COURT ERRED WHEN IT FOUND THAT TROOPER BARNES DID NOT HAVE A LAWFUL BASIS TO DETAIN APPELLEE AND REQUEST THAT HE PERFORM FIELD SOBRIETY TESTS.

## III. DISCUSSION

{¶ 6} " 'Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " (Citations omitted.) *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 7} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures. *State v. Orr*, 91 Ohio St.3d 389, 391 (2001). "It is well-established that stopping an automobile, thus temporarily detaining its occupants, constitutes a seizure under the Fourth Amendment to the U.S. Constitution." *State v. Smith*, 10th Dist. No. 13AP-592, 2014-Ohio-712, ¶ 10, citing *State v. Dorsey*, 10th Dist. No. 04AP-737, 2005-Ohio-2334, ¶ 17.

{¶ 8} "A traffic stop is constitutionally valid * * * if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime, including a traffic violation." *Id.,* citing *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7; *State v. McCandlish*, 10th Dist. No. 11AP-913, 2012-Ohio-3765, ¶ 10

(observation of traffic violation is enough for reasonable and articulable suspicion to stop car); and *State v. Barker*, 10th Dist. No. 11AP-170, 2011-Ohio-5769, ¶ 12-13. "Pursuant to a valid, investigatory stop, an officer possessing a reasonable, articulable suspicion that a driver is intoxicated can perform field sobriety tests." *Columbus v. Shepherd*, 10th Dist. No. 10AP-483, 2011-Ohio-3302, ¶ 23, citing *Columbus v. Bickis*, 10th Dist. No. 09AP-898, 2010-Ohio-3208, ¶ 19, and *State v. Perkins,* 10th Dist. No. 07AP-924, 2008-Ohio-5060, ¶ 8. "Reasonable suspicion entails some minimal level of objective justification, 'that is, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause.' " *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 17 (10th Dist.), quoting *State v. Jones*, 70 Ohio App.3d 554, 556-57 (2d Dist.1990). "Whether the police acted with 'reasonable suspicion' requires consideration of the totality of the circumstances." *In re B.A.R.*, 10th Dist. No. 13AP-396, 2013-Ohio-5712, ¶ 14, citing *United States v. Cortez,* 449 U.S. 411, 417 (1981).

{¶ 9} Here, the trial court found reasonable suspicion existed for the initial traffic stop. Appellant does not challenge this finding on appeal. However, appellee makes several arguments about the propriety of the trial court's finding which are in the nature of an assignment of error in cross-appeal. However, appellee did not file a cross-appeal, so his arguments about the initial stop are not properly before us. App.R. 3(C)(1) ("A person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order * * * shall file a notice of cross appeal within the time allowed by App.R. 4."); *See Saxton v. Navistar, Inc.*, 10th Dist. No. 11AP-923, 2013-Ohio-352, ¶ 18. Therefore, we will presume the court correctly found reasonable suspicion existed for the initial stop, i.e., Trooper Barnes' observation of a traffic violation.[1]

{¶ 10} In ruling on whether Trooper Barnes could perform FSTs, the trial court reasoned:

> The Trooper observed little sign of impaired driving. The alleged turning violation, standing alone, is not an indicator of

---

[1] *See also State v. Ferrell*, 5th Dist. No. 13 CAC 01 001, 2013-Ohio-4651, ¶ 15 ("reasonable and articulable grounds to make the stop could be properly found where a law enforcement officer makes an on-the-road investigatory observation that a vehicle's license plate lighting is either non-existent or significantly obscured").

impaired driving. In fact, it could be that a majority of drivers do not turn into the closest lane to the centerline on a left hand turn when turning onto a road with multiple lanes. The only indicators of possible impairment exhibited by the Defendant were an odor of alcohol, an admission to drinking some amount, glassy eyes, and a *de minimis* lane violation (weaving within the lane), although that was not clearly visible on the video presented. The latter can be attributed to noticing the cruiser following him as much as it can to being impaired, given the fact that the Defendant slowed once on Polaris Parkway, as if he had seen the Trooper in the mirror. The odor and admission is only an indicator of drinking, not necessarily an indicator of impairment. Upon cross examination, Trooper Barnes confirmed that Defendant did not have slurred speech and did not have trouble producing his license, both of which would be an indicator of possible impairment. No testimony was elicited about any balance problems exhibited by Defendant during the encounter, which could also indicate possible impairment.

Decisions in similar cases have held that these factors alone do not constitute sufficient probable cause to detain a person suspected of impaired driving in order to administer field sobriety tests. See *State v. Reed*, [7th Dist. No. 05 BE 31] 2006-Ohio-7075 (7th Dist.), citing *State v. Dixon*, [2d Dist. No. 2000-CA-30 (Dec. 1, 2000)] (2nd Dist.), and authorities cited therein.

Based upon the above, the Court finds that there existed no probable cause to detain and arrest the Defendant, considering all of the above factors.

(R. 33, Amended Judgment Entry 2-3.)

{¶ 11} It is unclear whether the trial court applied the correct legal standard when it found Trooper Barnes could not detain appellee to administer FSTs. The court repeatedly referenced the incorrect standard of "probable cause" in its analysis. However, the court relied on two cases that utilized the correct standard of reasonable suspicion— *State v. Reed*, 7th Dist. No. 05 BE 31, 2006-Ohio-7075, and *State v. Dixon*, 2d Dist. No. 2000-CA-30 (Dec. 1, 2000). In any event, we will review the facts of the case, apply the correct standard, and determine whether Trooper Barnes had the requisite reasonable suspicion to administer FSTs. *See, e.g., State v. Cordell*, 10th Dist. No. 12AP-42, 2013-

Ohio-3009, ¶ 10, 15, and *State v. Battle*, 10th Dist. No. 10AP-1132, 2011-Ohio-6661, ¶ 25, 39 (In both cases, after finding the trial court applied an incorrect standard in ruling on a motion to suppress, we reviewed the facts and applied the correct standard to determine whether suppression was warranted.). In doing so, it is significant to note that nowhere in the trial court's analysis did the court indicate it did not find the testimony of Trooper Barnes credible. Rather than questioning the credibility of Trooper Barnes, the court found the facts as applied to its interpretation of the law warranted the suppression of evidence. Therefore, our analysis of reasonable suspicion for the administration of the FSTs presents a question of law, not an issue of fact. *See id.* at ¶ 38.

{¶ 12} In this case, Trooper Barnes developed a suspicion that appellee was intoxicated from: (1) a wide turn out of a bar parking lot in the early morning hours, (2) the reasonable suspicion Trooper Barnes had that appellee committed a turn violation in turning from Sancus onto Polaris, (3) the weaving on Polaris, (4) a strong odor of alcohol in a vehicle in which appellee was the only occupant, (5) bloodshot and glassy eyes, and (6) the admission to coming from a bar at which appellee had several beers.

{¶ 13} The trial court found there could be an innocent explanation for the turn violation and weaving, and the odor of alcohol and admission to drinking were indicative of consumption, not necessarily impairment. In addition, appellee argues there could be an innocent explanation for bloodshot and glassy eyes. Appellee also emphasizes the fact that Trooper Barnes testified the strong odor of an alcoholic beverage was coming from within the vehicle, which could mean the odor had an innocent source apart from appellee's breath.

{¶ 14} However, the fact that reasons articulated as justification for an officer's suspicion have innocent explanations does not mean the officer's suspicion was unreasonable. *See State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 18-19; *State v. Taylor*, 10th Dist. No. 05AP-1016, 2006-Ohio-5866, ¶ 11, citing *United States v. Sokolow*, 490 U.S. 1, 9 (1989) (stating although each act, "in and of itself, could perhaps appear innocent, police officers may still have justification for conducting further investigation when the acts are viewed together); *State v. Floyd*, 9th Dist. No. 11CA010033, 2012-Ohio-990, ¶ 18, citing *State v. Elliott*, 4th Dist. No. 98CA613 (May 20, 1999) ("The possibility of an innocent explanation * * * does not deprive an officer of the

capacity to entertain a reasonable suspicion of criminal conduct."); *State v. Ware*, 8th Dist. No. 96327, 2011-Ohio-5665, ¶ 19, quoting *State v. Taylor*, 106 Ohio App.3d 741, 752 (2d Dist.1995) (" 'In making a determination of reasonable suspicion, the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts.' ").  The United States Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1 (1968) "precludes this sort of divide-and-conquer analysis."  *Batchili* at ¶ 19, quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002). "The 'reasonable and articulable suspicion' analysis is based on the *collection* of factors, not on the individual factors themselves." (Emphasis sic.) *Id.*

{¶ 15} Appellee states it is "noteworthy that the [t]rooper failed to activate his belt audio microphone when first approaching [a]ppellee and specifically when the [t]rooper states [a]ppellee admitted to consuming."  (Appellee's brief, at 6.)  Appellee cites nothing in the record to support this statement.  Trooper Barnes testified "[f]or some reason" the audio on his microphone was not working the day of incident—not that he failed to turn the microphone on.  (Tr. 22.)  Again, the trial court did not identify any credibility problems with Trooper Barnes' testimony.  Appellee also complains Trooper Barnes failed to inquire about the type of alcohol appellee consumed, but appellee told Trooper Barnes he had beer.  In addition, appellee complains Trooper Barnes did not inquire about the size of the drinks or specific time appellee drank them.  But there is no specific set of questions a trooper must ask in order to obtain reasonable suspicion to conduct FSTs.

{¶ 16} Appellee also points to several factors that suggest he was not intoxicated: (1) when Trooper Barnes initiated the stop, appellee pulled off the roadway and stopped his car without incident, (2) he produced his license and registration without difficulty, i.e., he demonstrated no fine motor skills problems, (3) the absence of slurred speech, and (4) the lack of evidence that, upon exiting his vehicle, he had any difficulties with balance or gait.  However, Trooper Barnes articulated something more than a mere hunch that appellee might be impaired. While the factors appellee highlights call into question whether appellee was in fact impaired, the principal function of an investigative detention to administer FSTs is to resolve such ambiguities and quickly establish whether the suspect is impaired or not.  *See, e.g., State v. Elliott*, 4th Dist. No. 08CA50, 2009-Ohio-

6006, ¶ 13 (explaining the principal function of an investigative stop is to resolve ambiguities and establish whether activity is in fact legal or illegal).

{¶ 17} The articulated reasons for Trooper Barnes' suspicion, which we summarized above, cumulatively provided reasonable suspicion for appellee's continued detention for the administration of FSTs. *See State v. Montelauro*, 10th Dist. No. 11AP-413, 2011-Ohio-6568, ¶ 10, 13, 19 (finding reasonable suspicion for FSTs based on obvious odor of alcohol emitting from vehicle, admission to drinking Long Island Iced Tea at location officer knew had half price drinks that night, and glassy, bloodshot eyes despite absence of erratic driving, slurred speech, problems producing license, and difficulty exiting vehicle). The cases cited by the trial court do not compel a different conclusion. Aside from the fact that *Reed* and *Dixon* are not binding authority, they are readily distinguishable from the case at hand.

{¶ 18} In *Reed*, the Seventh District found no reasonable suspicion for the administration of FSTs where: (1) the officer stopped the defendant in the early morning for a loud exhaust and window tint violation, (2) the officer observed no moving violation or erratic driving, (3) the officer detected a "slight" odor of alcohol on the defendant, (4) the defendant had red, glassy eyes, and (5) the defendant admitted to consuming two beers earlier that evening. *Reed* at ¶ 2-3, 10, 12, 27. Similarly, in *Dixon*, the Second District found no reasonable suspicion for the administration of FSTs where: (1) the defendant was stopped in the early morning for a window tint violation, (2) the officer detected an odor of alcohol on the defendant's person, (3) the defendant had bloodshot, glassy eyes, and (4) the defendant admitted he had consumed "one or two beers." *Dixon*.

{¶ 19} In contrast to the defendants in *Reed* and *Dixon*, appellee was stopped for a moving violation, not an equipment violation. In addition, appellee was observed making a wide turn from a bar parking lot and weaving within his own lane of travel prior to the stop. Appellee admitted to having not just one or two drinks but to having several beers at the bar he had just left. In addition, the trooper in this case detected a strong odor of an alcoholic beverage in appellee's vehicle in addition to the bloodshot and glassy eyes. In contrast, the officer in *Reed* described the odor of alcohol on the defendant as "slight," and in *Dixon*, the officer did not describe the strength of the odor. Given these factual

distinctions, *Reed* and *Dixon* do not support the conclusion that no reasonable suspicion for the administration of FSTs exists in this case.

{¶ 20} For the foregoing reasons, we find reasonable suspicion existed for Trooper Barnes' detainment of appellee for the administration of FSTs. Accordingly, we sustain the sole assignment of error. We affirm the portion of the trial court's judgment finding reasonable suspicion for the initial traffic stop because appellant does not challenge it and appellee did not file a cross-appeal as to that finding. We reverse the portion of the trial court's judgment finding the detention of appellee for the administration of FSTs improper and concluding that no probable cause existed for the arrest. We remand this matter to the Franklin County Municipal Court for further proceedings consistent with this decision.

*Judgment affirmed in part;*
*reversed in part and cause remanded.*

BROWN and LUPER SCHUSTER, JJ., concur.