[Cite as *State v. Taylor*, 2017-Ohio-139.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                      Court of Appeals No. L-15-1309

      Appellee                               Trial Court No. CR0201502082

v.

Gabriel Taylor                              **DECISION AND JUDGMENT**

      Appellant                              Decided:  January 13, 2017

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Katie L. Nelson, Assistant Prosecuting Attorney, for appellee.

Tim A. Dugan, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Gabriel Taylor, appeals from the November 18, 2015 judgment of

the Lucas County Court of Common Pleas convicting him of violating R.C.

2923.13(A)(3), having a weapon while under a disability, and R.C. 2923.12(A)(2) and

(F), carrying a concealed weapon, and sentencing him to 47 months of imprisonment.  He

asserts the following single assignments of error:

The Trial Court erred in denying Appellant's motion to suppress evidence, in violation of Appellant's Fourth Amendment right against unreasonable search and seizure.

**{¶ 2}** Appellant filed a motion to suppress the physical evidence and his statements on the ground that there was a warrantless search of his person and the evidence found was illegally seized by the Toledo Police Department. The trial court denied the motion. On appeal, appellant argues in his sole assignment of error that there was clearly a seizure in this case because the officers immediately gave commands to everyone when they arrived on the scene. Furthermore, appellant argues the police did not have sufficient corroboration of the anonymous 911 phone call information to stop and search appellant.

**{¶ 3}** The following evidence was presented at the motion to suppress hearing.

**{¶ 4}** Keith Hurst, a Toledo Police Department detective was directed to investigate a tip from an anonymous 911 caller on June 26, 2015, at 5:00 or 6:00 p.m. The caller was a concerned neighbor who reported there were possibly three black men loitering at the back of an apartment building at 437 West Bancroft Street. The caller knew that none of the men lived at that address. The caller was not certain what they were doing, but suggested drugs were involved. The caller also stated the man wearing sunglasses had a gun. A second man was identified as wearing a red jacket.

**{¶ 5}** At the time, the detective was working undercover in an unmarked vehicle for the drug and gang crimes reduction unit. He testified that he has investigated

2.

hundreds of drug crimes. Based on his experience, the officer recognized this location was in a high crime area for illegal drug activity and he knew from experiences that such crimes often involve firearms and gang activity.

{¶ 6} When the officer arrived at the location, he noticed several individuals, one matching the description of the black male wearing glasses and another matching the description of a black male wearing a long-sleeved red jacket or shirt. None of the other four or five individuals were wearing glasses that evening. The group was conversing and did not appear to notice when the detectives arrived. After verifying the individuals fit the description given in the 911 call, the detective notified crews in the area that the individuals had been located. The additional crews were present at the time the detectives exited their vehicles.

{¶ 7} As they approached the group, the officers identified themselves as police officers. The detective observed the individual in the red jacket put what appeared to be a baggie of narcotics into his mouth. Appellant did not seem to respond to the presence of the officers. When the detectives gave verbal commands, such as show your hands and get on the ground, some of the individuals complied but appellant and another individual did not. Because the tipster indicated appellant had a gun and he had hesitated to comply with the detective's orders, the detective drew his weapon. The detective repeated his instructions and appellant and the others got down on the ground.

{¶ 8} The detective asked appellant if he had anything illegal on him and he said no. The detective asked appellant to stand in order to pat him down for weapons. The

3.

detective directed appellant to stand next to a chain-linked fence and placed his hands on the fence. Appellant complied but twisted his body so that it was more difficult to search his right hip. The detective found a loaded 45 caliber handgun concealed under appellant's shirt in his waistband of his pants on the front right side of his body.

{¶ 9} Christopher Darden, one of the individuals arrested that night because he had a domestic violence warrant testified. He had also been charged with tampering with evidence and had entered a guilty plea to the lesser included offense of obstructing justice. He testified that he had known appellant since childhood. In the morning hours of June 26, 2015, Darden was sitting on his cousin's porch at his apartment with appellant and other friends conversing. Appellant was wearing grayish-black sweatpants, a black shirt which was not tucked into his pants, and sunglasses. Darden was wearing a red, white, and blue Beatles shirt, khaki shorts, a red hat, red tennis shoes, and dark tinted sunglasses, with white frames. Darden did not witness appellant possessing anything illegal at the time. As they were socializing, police detectives came out of nowhere. Darden was startled. He further testified the detectives told the group to show their hands and stated, "Don't move or I'll pop you." Darden immediately put a baggie filled with marijuana in his mouth. All four people present raised their hands. Everyone was cooperative. Darden testified that after the detectives had them in custody, uniformed police officers arrived on the scene.

{¶ 10} The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and the Ohio Constitution, Article I,

4.

Section 14, recognize the right of an individual to be free from unreasonable searches and seizures. *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); *Map v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *State v. Murrell*, 94 Ohio St.3d 489, 493-494, 764 N.E.2d 986 (2002); *State v. Robinette*, 80 Ohio St.3d 234, 238-239, 685 N.E.2d 762 (1997).

{¶ 11} Any searches or seizures that occur "outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A limited investigative stop and frisk can be reasonable when an officer observes unusual conduct that based on his experience gives rise to a reasonable suspicion that criminal activity is afoot, the person observed may be armed and presently dangerous, and, after identifying himself, the officer's suspicions are not resolved and he fears for his or another's safety. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). "[T]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph one of the syllabus. *See also United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed. 2d 621 (1981). During the investigative stop, the officer can conduct a limited protective search to check for concealed weapons when the surrounding circumstances support a reasonable suspicion the individual is armed and

5.

dangerous. *Terry* at 24, 30; *State v. Andrews*, 57 Ohio St.3d 86, 89, 565 N.E.2d 1271 (1991).

{¶ 12} When the stop is based in part upon information obtained from others, the reasonableness of the stop and frisk depends, based upon the circumstances of each case, whether the tip itself has a sufficient indicia of reliability to justify the investigative stop. *United States v. Hensley*, 469 U.S. 221, 229-232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); *In re B.A.R.*, 10th Dist. Franklin No. 13AP-396, 2013-Ohio-5712, ¶ 16. "Factors that should be considered in determining the value of the informant's tip are the informant's 'veracity, reliability, and basis of knowledge.'" *Id.*, citing *Alabama v. White*, 496 U.S. 325, 328, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

{¶ 13} A stop and frisk based upon an anonymous tip is reasonable only when the tip itself has a sufficient indicia of reliability and, therefore, it is reasonable to conclude the tipster has knowledge of specific criminal activity to justify a stop and frisk. *Id.* at 330-331. Simple knowledge of a subject's description and location are insufficient to support a reasonable suspicion that the subject is engaged in criminal activity. *Florida v. J.L.*, 529 U.S. 266, 270-271, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000); *In re B.A.R.* at ¶ 22. If only a description and location are disclosed, there must be some additional facts observed by the officer which would give rise to a reasonable suspicion of criminal activity. *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 42, *superseded by statute on other grounds*.

6.

**{¶ 14}** A "seizure" of a person is generally defined as a single act of applying physical force to take possession of the person, i.e., arrest. *California v. Hodari D.*, 499 U.S. 621, 625, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). An officer's use of physical force (pursuit) or a show of authority (yelling halt) does not restrain the liberty of a citizen, or implicate the Fourth Amendment, where the citizen does not yield to the officer's authority. *Id.* at 626-627. Any actions that occur prior to seizure are part of the totality of the circumstances which can be considered to determine the reasonableness of the search and seizure. *United States v. Simmons*, 560 F.3d 98, 106-107 (2d Cir.2009).

**{¶ 15}** During a motion to suppress hearing, the trial court acts as the trier of fact. The trial court alone weighs the evidence and determines the credibility of the witnesses. Therefore, the reviewing court must accept the trial court's findings of fact which are supported by competent, credible evidence. *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.Ed.2d 629, ¶ 50. Accepting the supported factual findings as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether these facts met the appropriate legal standard. *Id.*

**{¶ 16}** The trial court found, based on the evidence presented at the motion to suppress hearing, that the Toledo police received an anonymous tip that a group of males were behind a building located at 437 West Bancroft Street, Toledo, Ohio, which was not where they lived and was in an area known to the police to be a high drug crime area. The tipster assumed the males were selling drugs. One man was described as a black male wearing glasses and carrying a gun. Another man was described as wearing a red

7.

shirt or jacket. Upon investigation, police detectives located several young men at the location described and one of them was wearing glasses, later identified as appellant. When the detectives arrived at the scene, they immediately directed the men to show their hands. One of the men immediately put his hand to his mouth and began to chew of what appeared to be a plastic baggie typically used to store drugs. This action led the officers to believe the males were selling drugs. The officers directed the suspects to raise their hands. Appellant did not immediately comply with the officers' directions but eventually raised his hands. Appellant was directed to place his hands on a chain fence and the officer noted appellant turned his body which the officer interpreted as a move to prevent his right side from being fully searched. Appellant was searched and a loaded, chambered gun was found.

{¶ 17} Because the officers were able to confirm the location of the suspects, appellant matched the description of the man identified by the tipster, and the men were in a high crime area, the trial court concluded that the police had sufficiently corroborated the tip to justify the stop and frisk as a reasonable search and seizure.

{¶ 18} Accepting the trial court's findings of fact, which were supported by the evidence, we find the search and seizure in this case was reasonable. When the officers first arrived on the scene, they could make an investigative detention to determine whether there was criminal activity afoot. The police announced their arrival and asked the suspects to show their hands. Such an action is a limited protective search for officer safety. In any event, appellant did not comply with the officers' requests and, therefore,

8.

could not argue under the facts of this case that he was immediately "seized" upon arrival of the officers.

{¶ 19} Once the detective observed the suspect in the red shirt swallow the baggie, the officer had his own independent basis for developing a reasonable suspicion that drug activity was occurring. Appellant eventually complied with the detective's command to get on the ground and therefore was "seized" at that time. Afterward, appellant was directed to stand by the fence to be searched. At that time, the detective had his own observations to support a reasonable suspicion of drug activity as well as his knowledge of the common presence of weapons in drug crimes and the tipster's information about appellant having a firearm. All of these facts justified a pat down of appellant to search for a firearm to protect the officers. Appellant's suspicious conduct during the pat down further confirmed the officer's reasonable suspicion that appellant was armed. Under the totality of the circumstances, we find the officers did not violate appellant's rights under the Fourth Amendment of the United States Constitution and Article I, Section 14, of the Ohio Constitution. Appellant's sole assignment of error is found not well-taken.

{¶ 20} Having found the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.           _____
                                                      JUDGE

Thomas J. Osowik, J.            
                                              _____

James D. Jensen, P.J.                                               JUDGE
CONCUR.

                                              _____
                                                     JUDGE